## IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| H&M ASSOCIATES, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | No. 22-110C |
| | ) | |
| v. | ) | Filed: March 31, 2023 |
| | ) | |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## <u>OPINION AND ORDER</u>

Plaintiff H&M Associates, LLC filed this action against the United States alleging that the United States Air Force ("USAF") improperly terminated for default its contract to replace a centrifugal Trane chiller at Joint Base San Antonio-Lackland. Before the Court is Defendant's Motion to Dismiss pursuant to Rule 12(b)(1) of the Rules of the United States Court of Federal Claims ("RCFC"), for failure to establish subject-matter jurisdiction, and Rule 12(b)(6), for failure to state a claim upon which relief may be granted.

For the reasons discussed below, the Court finds that it lacks subject-matter jurisdiction as to any claim premised on a contractual modification or an equitable adjustment (whether raised affirmatively or defensively) because no claim was submitted to the contracting officer for final decision or certified in accordance with the Contract Disputes Act ("CDA"), 41 U.S.C. §§ 7103(a)–(b). However, the challenge to the default termination falls within the Court's jurisdiction, and Plaintiff has at the pleadings stage sufficiently stated a claim upon which relief may be granted. Accordingly, Defendant's Motion to Dismiss is **GRANTED in part** and **DENIED in part**.

## I.  BACKGROUND

### A.    Factual Background[1]

On August 13, 2020, the USAF issued a solicitation to replace a chiller at Joint Base San Antonio-Lackland in San Antonio, Texas.  Pl.'s Compl. ¶ 7, ECF No. 1.  The project was 100% set aside for Women Owned Small Businesses.  *Id.* ¶ 8.  The solicitation required "demolition and replacement of the [c]entrifugal chiller, DDC EMCS, pumps, and of limited piping, hangers, electrical circuits and components, appurtenances and incidental related work."  *Id.* ¶ 11.  The solicitation indicated that Defendant would provide the awardee with one set of contract drawings and specifications and a virtual site visit.  *Id.* ¶¶ 16–17.

On September 30, 2020, the USAF awarded a fixed price contract to Plaintiff.  *Id.* ¶ 12.  "The contract required Plaintiff to deliver to Defendant all labor, equipment and materials to demolish and replace a [c]entrifugal Trane [c]hiller along with various components and appurtenances[.]"  *Id.* ¶ 13.  Additionally, the contract delivery schedule required "delivery of design and submittal of long lead items on or before 100 days after receipt of the Notice to Proceed" ("NTP"); "the installation of the replacement Trane [c]hiller on or before 120 days after receipt of the NTP"; and "completion of all [c]lose out [a]ctivities on or before 30 days after receipt of [the] NTP as set forth in FAR [Federal Acquisition Regulation] 52.211-10 'Commencement, Prosecution, and Completion of Work.'"  *Id.* ¶ 14.

---

[1]  The following background facts are compiled from Plaintiff's Complaint and supplemented in part by materials in the appendix to Defendant's Motion.  *See* Pl.'s Compl., ECF No. 1; App. to Def.'s Mot. to Dismiss Pl.'s Compl., ECF No. 6-1.  Each of those materials are referenced in or integral to the Complaint, and Plaintiff does not dispute their authenticity.  *Bell/Heery v. United States*, 106 Fed. Cl. 300, 307–08 (2012), *aff'd*, 739 F.3d 1324 (Fed. Cir. 2014) (holding that a court may consider materials specifically referenced in the complaint or integral to it without converting a motion to dismiss into a motion for summary judgment).

On October 7, 2020, Plaintiff, a San-Antonio Trane representative, local installers, electricians, and other service providers participated in a site visit. *Id.* ¶ 19. On October 9, 2020, the USAF contracting officer ("CO"), issued a Partial NTP for the design and submittal activities and set the 100-calendar-day period of performance as October 13, 2020, to January 20, 2021. *Id.* ¶¶ 9, 21–22, 26.

Soon thereafter, from October 18 to November 18, 2020, Plaintiff's owner (and representative), Ms. Maumita Mandal, traveled to India because her mother suffered a head injury and later passed away. *Id.* ¶ 24. After Ms. Mandal's return from India, Plaintiff called the contract specialist and the CO several times between November 18 and December 1, 2020, but was unable to reach them because their voicemail boxes were full. *Id.* ¶ 25; ECF No. 6-1 at 4, 42. Between December 2, 2020, and January 7, 2021, Plaintiff submitted four requests for information ("RFI"): RFI 1 sought information on certain technical requirements and the requested configuration for the chiller; RFI 2 asked for make and model numbers for motors that needed replacement; RFI 3 sought confirmation on licensing; and RFI 4 followed up on questions in RFI 2 that were not adequately answered. ECF No. 1 ¶ 31. During the same period, Plaintiff also sent "various emails to Defendant asking . . . for responses" to its RFIs. *Id.* ¶ 32. On December 10, 2020, Plaintiff submitted its first set of submittals ("Submittal 0001") for the chiller and provided the variable frequency drive ("VFD"), although Plaintiff had not received a response to RFI 1 yet. *Id.* ¶ 33.

On January 8, 2021, Plaintiff emailed the Government with its concerns about the lack of responses to its four RFIs. *Id.* ¶ 34. In particular, the email stated that Plaintiff could not "place a purchase order with . . . T[rane] unless the submittals are approved" by the Government. *Id.* ¶ 35. It added that "the Scope of Work [did] not provide any specifications for the chiller equipment to know what exactly the [G]overnment wants;" and thus, Plaintiff could not confidently place the

purchase order.  *Id.*  It further advised that the Trane representative, who also was copied on the email, had notified Plaintiff that Trane prices would increase the following week; and therefore, Plaintiff requested that the approvals for the chiller and VFD as well as responses to the four RFIs be expedited.  *Id.*  The same day, the Government responded to RFIs 1, 2, and 3; however, Plaintiff's Submittal 0001 was not yet approved.  *Id.* ¶ 36.

On January 11, 2021, the CO issued a cure notice to Plaintiff.  *Id.* ¶ 37.  Plaintiff responded via email the same day, providing three dates to discuss the issues and pointing out that many emails and calls from Plaintiff to the Government had "never received any responses."  *Id.* ¶¶ 39–40.  Plaintiff highlighted that prior emails from Plaintiff to the Government between January 6 and January 8 raised concerns "that responses to RFIs and submittals [were] not being provided from the [G]overnment, and that as a result[,] timely delivery of this project will be difficult."  *Id.* ¶ 39.  Plaintiff also complained that the contract did not offer product specifications for heavy ticket items and that it was too risky for Plaintiff "to proceed with a half a million dollar purchase from T[rane] for just one item – the [c]hiller" without first receiving approvals or responses to the RFIs.  *Id.* ¶ 41.  That day and the following day, when Plaintiff reached out to local installers about the project, they were already aware of the January 11, 2021, cure notice.  *Id.* ¶ 42.

On January 13, 2021, a cure meeting was held.  *Id.* ¶ 44.  The next day, the Government responded to RFI 4 and approved Submittal 0001.  *Id.* ¶¶ 31, 51.  On January 19, 2021, Plaintiff requested an updated submittal list via email, noting that she was uncertain what submittals would be needed other than the chiller and VFD.  *Id.* ¶ 47; *see* ECF No. 6-1 at 51.  "The CO referred Ms. Mandal to Attachment 2 of the contract, a draft Material Submittal, and told her to ask for recommendations from her subcontractors and suppliers," as it was up to the contractor to determine what was needed to fulfill the contract.  ECF No. 1 ¶ 47; *see* ECF No. 6-1 at 50.  The

CO also stated he was open to a follow up call "to answer any other questions" and "provide as much direction and guidance" as possible, noting that the Government was relying on Plaintiff's expertise and knowledge to execute the work.  ECF No. 6-1 at 50.  Ms. Mandal responded, stating she understood and would "pass the message to [her] installers and the manufacturer."  *Id.*  Plaintiff alleges, however, that "the CO refused to provide the list she requested."  ECF No. 1 ¶ 47.

On January 22, 2021, the CO issued a letter of concern, "alleging that Plaintiff had delayed the contract and could be assessed liquidated damages."  *Id.* ¶ 48.  The CO also warned that if Plaintiff did not take corrective action to cure its performance the Government would be forced "to exercise its rights under FAR clause 52.249-10 'Default (Fixed Price Construction).'"  *Id.*  The January 22 letter further indicated that Plaintiff was delinquent with various submittals that should have been completed within the 100 days allocated in the NTP, including for "chiller pumps, motors, piping materials, valves and flanges, [and] backflow devi[c]es which are indispensable and may be long lead items."  ECF No. 6-1 at 53; *see* ECF No. 1 ¶ 50.  In the same letter, the Government admitted partial responsibility for not providing timely responses to the submittals and RFIs, caveating, however, that "some of the information requested by [Plaintiff] should . . . [have been] obtained as part of [the] field investigation as well as determinations made by [its] team/subcontractors."  ECF No. 1 ¶ 52; *see id.* ¶¶ 51, 54.  The CO thus extended the period of performance by 37 days to account for the Government's delay but informed Plaintiff that it "is expected to accelerate performance to mitigate unsatisfactory progress."  *Id.* ¶ 55; *see id.* ¶ 56.

On January 28, 2021, Plaintiff responded to the CO, requesting an "Equity Adjustment" because the Government delayed in responding to Plaintiff's RFIs and approving its submittals, during which time "all mechanical compan[ies], parts [sic] and fabricators . . . raised their prices, and [refused] . . . to honor their previously quoted prices."  *Id.* ¶ 58.  Specifically, Plaintiff advised

that the revised cost for a Trane chiller was now $1,010,000 (compared to the fixed award price of $725,691.41 for the full contract) while a York chiller with identical chiller specifications to that of Trane would cost $810,000. *Id.* ¶ 59; *see* ECF No. 6-1 at 67, 69. Alternatively, Plaintiff requested a termination for convenience. ECF No. 1 ¶ 60. The CO responded to Plaintiff the same day, requesting documentation to substantiate the equity adjustment, noting the request for a termination for convenience was not justified at that time, and referring Plaintiff to its SBA representative to advise on the ramifications of a default termination. *Id.* ¶¶ 60–61; *see* ECF No. 6-1 at 58.

On February 8, 2021, the CO issued a show cause notice, explaining that since Plaintiff had failed to cure the conditions endangering performance under the contract, the Government was considering terminating the contract under the provisions for default. ECF No. 1 ¶ 63. The notice advised that Plaintiff should present "in writing . . . any facts bearing on the question . . . within 10 days after receipt of this notice." ECF No. 6-1 at 63. Over two months later, on April 21, 2021, Plaintiff emailed stating that it "intended to, and still continued to comply with the terms and conditions of the contract," and reiterated that much of the information it needed from USAF to effect performance was not available in a timely fashion and caused a steep price increase. ECF No. 1 ¶¶ 64–66. It proposed the installation of a York chiller instead. *Id.* ¶ 67. The email also stated that under its York proposal, Plaintiff could complete "the job without the CO issuing additional money, which would be in the interest of the Government[,] and that once the Government agrees, [Plaintiff] could move quickly to place orders and get the full work completed in 22-24 weeks' time frame." *Id.* ¶ 69. The Government did not respond to the April 2021 email, and on July 20, 2021, the CO terminated the contract for default.[2] *Id.* ¶ 72.

_____

[2] The Government claims that it does not have a record of receiving the April 21, 2021,

**B.      Procedural History**

On February 3, 2022, Plaintiff filed its Complaint against the United States in this Court, challenging the USAF's termination for default and asserting five causes of action:   (1) the Government's actions and failure to respond to Plaintiff's requests for critical information contributed to delays and ultimately default; (2) the CO abused his discretion and failed to reasonably follow FAR requirements when terminating for default; (3) the Government breached its duty of good faith and fair dealing by not providing critical information to Plaintiff in a timely manner as well as by allegedly leaking information disrupting Plaintiff's ability to acquire a local installer; (4) Plaintiff's default was excused because of defective specifications, excusable delays, and commercial impracticability or impossibility; and (5) the Government breached its duty to cooperate with Plaintiff and not hinder performance by not clarifying specifications and by not providing sufficient information.  ECF No. 1 ¶¶ 73–149.

On May 4, 2022, Defendant moved to dismiss the Complaint pursuant to RCFC 12(b)(1) and 12(b)(6).  *See generally* Def's Mot. to Dismiss, ECF No. 6.  The Government argues that the Court lacks jurisdiction over any of Plaintiff's claims that seek a contractual modification or equitable adjustment and lacks jurisdiction to grant the broad declaratory relief Plaintiff seeks.  *Id.* at 8–9, 26, 32.  The Government concedes that the Court has jurisdiction over a prior material breach defense to the termination for default but alleges that Plaintiff has failed to state a plausible claim for which relief may be granted.  *Id.* at 33.  The motion is now fully briefed and ripe for decision.  *See* Pl.'s Opp'n, ECF No. 7; Def.'s Reply, ECF No. 9.  On December 16, 2022, the Court held oral argument.

---

email; however, for the purposes of the motion to dismiss, it accepts Plaintiff's allegation as true. Def.'s Mot. to Dismiss at 33, ECF No. 6; Oral Arg. Tr. at 21:25–22:18, ECF No. 13.

## II. DISCUSSION

**A.    Jurisdiction of the Court of Federal Claims**

The Tucker Act provides that "[t]he Court of Federal Claims shall have jurisdiction to render judgment upon any claim by or against, or dispute with, a contractor arising under [the CDA] including a dispute concerning termination of a contract, rights in tangible or intangible property, compliance with cost accounting standards, and other nonmonetary disputes on which a decision of the contracting officer has been issued under section 6 of that Act."  28 U.S.C. § 1491(a)(2); 41 U.S.C. §§ 7101–09.  Pursuant to the CDA, "contractors are required first to pursue claims with the contracting officer, the official charged with administering that particular government contract on behalf of the agency."  *M. Maropakis Carpentry, Inc. v. United States*, 84 Fed. Cl. 182, 195–96 (2008) (citing 41 U.S.C. §§ 605(a), 609(a)), *aff'd*, 609 F.3d 1323 (Fed. Cir. 2010).  This requirement, along with other procedural claim requirements, are "'jurisdictional prerequisites' to filing an action in the Court of Federal Claims."  *Id.* (citations omitted).

**B.    Standard of Review**

1.    RCFC 12(b)(1)

Before reaching the merits of a plaintiff's action, the Court must as a threshold matter assure itself that subject-matter jurisdiction exists.  *See* RCFC 12(b)(1), (h)(3); *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998) (affirming that subject-matter jurisdiction "'spring[s] from the nature and limits of the judicial power of the United States' and is 'inflexible and without exception'" (quoting *Mansfield v. Swan*, 111 U.S. 379, 382 (1884))).  The plaintiff bears the burden of establishing by the preponderance of evidence the Court's jurisdiction over its claim.  *See Estes Express Lines v. United States*, 739 F.3d 689, 692 (Fed. Cir. 2014).

When deciding whether to dismiss a complaint pursuant to RCFC 12(b)(1) for lack of subject-matter jurisdiction, the Court must accept all factual allegations as true and draw all

reasonable inferences in the claimant's favor. *See Henke v. United States*, 60 F.3d 795, 797 (Fed. Cir. 1995). However, if a complaint contains challenged factual allegations, for purposes of ruling on a motion to dismiss, the court may inquire into facts necessary to support jurisdiction and may resolve disputed facts. *See Al Johnson Constr. Co. v. United States*, 19 Cl. Ct. 732, 733 (1990); *see also Indium Corp. of Am. v. Semi-Alloys, Inc.*, 781 F.2d 879, 884 (Fed. Cir. 1985) (affirming that a court may consider "evidentiary matters outside the pleadings" when assessing a Rule 12(b)(1) dismissal).

    2.    <u>RCFC 12(b)(6)</u>

The Court must also dismiss an action if it fails to state a claim for which relief may be granted. RCFC 12(b)(6). To avoid dismissal under RCFC 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Although a complaint need not contain detailed factual allegations to raise a plausible claim, a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555; *see Papasan v. Allain*, 478 U.S. 265, 286 (1986) (holding that courts "are not bound to accept as true a legal conclusion couched as a factual allegation"). In deciding a motion under RCFC 12(b)(6), the Court may consider the complaint itself, "the written instruments attached to it as exhibits, 'documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.'" *Todd Constr., L.P. v. United States*, 94 Fed. Cl. 100, 114 (2010) (quoting *Tellabs, Inc. v. Makor Issues & Rts. Ltd.*, 551 U.S. 308, 322 (2007)), *aff'd*, 656 F.3d 1306 (Fed. Cir. 2011).

**C.    The Court Lacks Jurisdiction Over Claims and Defenses Not Submitted to the CO for a Final Decision.**

The Government argues that the Court does not possess jurisdiction to award monetary relief or to consider allegations that effectively seek a contractual modification or equitable adjustment since no claim was properly certified and submitted to the CO for a final decision.  ECF No. 6 at 26–29; *see* ECF No. 9 at 10–12.  The Court agrees.  Plaintiff has not met its jurisdictional burden regarding any claim for monetary relief and any contractual modification, equitable adjustment, or defense that effectively requests a change in the contract because the Complaint does not allege (and Plaintiff concedes) no claim was submitted to the CO pursuant to the CDA's presentment requirements.

Establishing this Court's jurisdiction under the CDA requires both a valid claim and a CO's final decision on that claim.  *M. Maropakis Carpentry*, 609 F.3d at 1327.  Other than providing that the contractor's claim must be in writing and submitted to the contracting officer for a final decision, the CDA does not define the term "claim."  41 U.S.C. §§ 7103(a)(1)–(2).  The FAR, however, does.  It defines a claim as a "written demand or written assertion by one of the contracting parties seeking, as a matter of right, the payment of money in a sum certain, the adjustment or interpretation of contract terms, or other relief arising from or relating to th[e] contract."  48 C.F.R. § 2.101; *see id.* § 52.233-1(c).  "While a CDA claim need not be submitted in any particular form or use any particular wording, it must contain 'a clear and unequivocal statement that gives the contracting officer adequate notice of the basis and amount of the claim.'"  *M. Maropakis Carpentry*, 609 F.3d at 1327 (quoting *Cont. Cleaning Maint., Inc. v. United States*, 811 F.2d 586, 592 (Fed. Cir. 1997)).  A claim also must "indicate to the contracting officer that the contractor is requesting a final decision."  *Id.*

10

With respect to claims that seek the payment of money, the claim must "demand a 'sum certain.'" *Creative Mgmt. Servs., LLC v. United States*, 989 F.3d 955, 962 (Fed. Cir. 2021). "[T]he absence of a sum certain is 'fatal to jurisdiction under the CDA.'" *Securiforce Int'l Am., LLC v. United States*, 879 F.3d 1354, 1359–60 (Fed. Cir. 2018) (quoting *Northrop Grumman Computing Sys., Inc. v. United States*, 709 F.3d 1107, 1112 (Fed. Cir. 2013)). Moreover, if the claim demands more than $100,000, it must be certified, as required by 41 U.S.C. § 7103(b)(1). Although a "defective certification" does not deprive the Court of jurisdiction, a failure to certify does. *Id.* § 7103(b)(3); 48 C.F.R. § 33.201 ("Failure to certify shall not be deemed to be a defective certification."). The same jurisdictional presentment requirements apply to claims "seeking an adjustment of contract terms [or an equitable adjustment] . . . whether [a contractor is] asserting the claim against the government as an affirmative claim or as a defense." *Securiforce Int'l Am.*, 879 F.3d at 1362 (quoting *M. Maropakis Carpentry*, 609 F.3d at 1331).

At the outset, the Court notes that it is difficult to glean from the Complaint itself precisely what claims and defenses Plaintiff raises given both the organization of the five causes of action in the Complaint, as well as the repeated or substantially similar allegations in each. Nevertheless, consistent with Plaintiff's representations at oral argument, the Court will construe the Complaint as alleging two standalone causes of action—the breach of the duty of good faith and fair dealing not to interfere (Cause III) and a challenge to the default termination (Cause II), with the remaining three causes of action representing additional defenses to the default termination. *See* Oral Arg. Tr. at 34:13–34:22, ECF No. 13. With that framework in mind, the Court addresses Defendant's jurisdictional arguments in turn.

     1.    <u>Breach of the Duty of Good Faith and Fair Dealing</u>

The Court does not have jurisdiction over Cause III because Plaintiff has not shown that such claim, or indeed any claim for monetary relief, was presented to the CO for a final decision.

As relevant here, the Complaint alleges that the Government breached its implied duty of good faith and fair dealing because it interfered with Plaintiff's performance of the contract by not providing in a timely manner critical information requested by Plaintiff.  ECF No. 1 ¶¶ 97–99, 105, 109.  The claim then asserts that the Government's delay was "the proximate reason why [Plaintiff] could not place orders on [the] high-priced items" (*i.e.*, the Trane chiller), *id.* ¶ 100; that the delays were not cured by the "self-serving decision to only award [Plaintiff] thirty-seven days . . . to finish performance," *id.* ¶ 101; and that "[t]he Government's admitted delays in responding to [Plaintiff's RFIs] were not excusable," *id.* ¶ 103.  Plaintiff alleges this breach of the Government's duty "directly affected Plaintiff's ability to perform under the contract," causing a direct domino effect leading to Plaintiff's alleged default.  *Id.* ¶ 116; *see id.* ¶¶ 105–06; *see also* ECF No. 13 at 36:1–14; 44:1–8.  As a remedy for the alleged breach, Plaintiff seeks lost profits, breach damages, fees, and costs.  ECF No. 1 ¶¶ 156–57.

The Complaint, however, does not allege that Plaintiff submitted a written claim to the CO asserting that it was entitled to such monetary relief on the basis of the Government's alleged breach of good faith and fair dealing.  At most, the Complaint references Plaintiff's communications to the Government requesting information necessary to place orders and the CO's responses.  *See, e.g.*, *id.* ¶¶ 31–32, 34–36, 39–40, 64–71.  According to these allegations, Plaintiff expressed concerns to the CO about a lack of information, the Government's delay in responding to requests for information, and the effect of these circumstances on Plaintiff's ability to perform.  But Plaintiff neither alleges, nor do the actual communications show, that Plaintiff sought, "as a matter of right, the payment of money in a sum certain" as a result of the alleged breach or that Plaintiff requested the CO to make a final decision on that claim.  *M. Maropakis Carpentry*, 609 F.3d at 1327.  The absence of such facts, which are a prerequisite to bringing a CDA claim even

in cases asserting a breach of the implied duty of good faith and fair dealing, is fatal. *See, e.g.*, *Bowman Constr. Co. v. United States*, 154 Fed. Cl. 127, 139 (2021) (holding that lack of sum certain demand was fatal to claim alleging breach of the duty of good faith and fair dealing); *Mansoor Int'l Dev. Servs., Inc. v. United States*, 121 Fed. Cl. 1, 2, 6 (2015) (holding there was subject-matter jurisdiction over a breach of good faith and fair dealing claim because the jurisdictional requirements were satisfied, *i.e.*, a claim was submitted to the CO); *Sarro & Assocs., Inc. v. United States*, 152 Fed. Cl. 44, 53 (2021) (same). Accordingly, the Court concludes that it does not have jurisdiction over Plaintiff's claim for breach of the duty of good faith and fair dealing.

### 2.   Challenge to the Termination For Default

The Court likewise lacks jurisdiction as to any part of Plaintiff's defenses to the default termination that effectively request a change in the contract—whether that be an extension of time, a contractual modification, or an equitable adjustment—since such claims also must be presented to the CO for a final decision first. *See Securiforce Int'l Am.*, 879 F.3d at 1363. In challenging the default termination, the Court understands the assertions in the Complaint to raise the following affirmative defenses to Plaintiff's default: (1) prior material breach; (2) the CO's abuse of discretion; and (3) commercial impossibility/impracticability. ECF No. 1 ¶¶ 73–95, 119–49. Of these, the commercial impossibility/impracticability defense solely involves an alleged constructive change to the contract requiring a CO's final decision.

As an initial matter, the Court notes that the Complaint states a commercial impracticability—not impossibility—defense because "'impossibility' of performance [only] exists 'when it is objectively determined that no contractor could perform the work.'" *TPL, Inc. v. United States*, 118 Fed. Cl. 434, 442 (2014) (quoting *Conner Bros. Constr. Co., Inc. v. United States*, 65 Fed. Cl. 657, 686 (2005)). That is not the case here. As the Complaint's allegations

make clear, the ultimate barrier to performance was the prohibitive costs of the Trane chiller that, according to Plaintiff, was a result of the Government's actions leading to its default. These allegations, thus, amount to a claim of commercial impracticability. *Id.*

Regardless, the Court lacks jurisdiction to entertain Plaintiff's impracticability defense. "Impracticability is 'treated as a type of constructive change to the contract; because a commercially impracticable contract imposes substantial unforeseen costs on the contractor, the contractor is entitled to an equitable adjustment.'" *Id.* (quoting *Raytheon Co. v. White*, 305 F.3d 1354, 1367 (Fed. Cir. 2002)). As discussed above, the Court does not have jurisdiction under the CDA over a claim seeking a change to the contract that was not first presented to the CO for final decision, even when, as here, it is raised as a defense.

In this case, the Complaint does not allege that Plaintiff submitted a request for an equitable adjustment to the CO. It contends only that Plaintiff responded to the CO's January 11 cure notice by requesting an "Equity Adjustment," to which the CO responded by directing Plaintiff to submit a request for equitable adjustment with supporting documentation. ECF No. 1 ¶¶ 58, 61; *see* ECF No. 6-1 at 57. Plaintiff does not allege that it complied with that instruction or otherwise pursued presentment of a claim for increased costs. Indeed, Plaintiff conceded that no request for an equitable adjustment was ever properly submitted. *See* ECF No. 13 at 47:16–22. Even if Plaintiff's response to the January 11 cure notice could be considered as such a request, it was not certified and thus fails on that independent ground.[3] Therefore, the impracticability defense cannot proceed.

---

[3] Certification was necessary because any claim seeking the difference between the fixed award price ($725,691.41) and the increased cost of the Trane chiller ($1,010,000) would have exceeded $100,000. ECF No. 1 ¶ 59; *see* 48 C.F.R. § 252.243-7002; 41 U.S.C. § 7103(b)(1).

**D.    The Court Lacks Jurisdiction Over Declaratory Relief Plaintiff Seeks.**

The Court also lacks jurisdiction to grant the broad declaratory relief Plaintiff seeks in its prayer for relief.  Specifically, Plaintiff asks the Court to declare that (1) "the Government's delays were not excusable and directly caused [Plaintiff]'s delays," ECF No. 1 ¶ 153; (2) "the Government's extension for 37 days was self-serving since the Government's own actions were not excusable and [Plaintiff] deserved a more reasonable time to perform," *id.* ¶ 154;[4] and (3) "the Government is not entitled to reprocurement costs or liquidated damages," *id.* ¶ 155.  Under the Tucker Act, the declaratory relief enumerated above is unavailable.

"[T]he Court may award equitable or other nonmonetary relief in Tucker Act cases in only three statutorily defined circumstances: (1) in bid protest actions brought pursuant to 28 U.S.C. § 1491(b); (2) as 'incident of and collateral to' a monetary judgment, as set out in the first two sentences of 28 U.S.C. § 1491(a)(2); and (3) for certain types of nonmonetary CDA claims, as described in the last sentence of § 1491(a)(2)." *Sergent's Mech. Sys., Inc. v. United States*, 157 Fed. Cl. 41, 47 (2021); *see Alvarado Hosp., LLC v. Price*, 868 F.3d 983, 999 (Fed. Cir. 2017) ("The Tucker Act does not generally confer jurisdiction for actions seeking declaratory or

---

[4] Although Plaintiff alleges the 37-day extension was self-serving and unreasonable, ECF No. 1 ¶¶ 76, 101, it does not allege that it timely appealed the CO's final decision granting the extension, as required by the FAR.  48 C.F.R. § 52.249–10(b)(2) (providing that extensions for excusable delay are final decisions subject to appeal in accordance with the Disputes clause).  Since that extension was granted on January 22, 2021, the period to appeal expired one year later on January 22, 2022—approximately two weeks before Plaintiff filed the instant complaint.  *See Textron Aviation Def. LLC v. United States*, 161 Fed. Cl. 256, 264 (2022) (citing 42 U.S.C. §§ 7104 (a), (b)(3)).    Relief addressing the 37-day extension is therefore beyond the Court's jurisdiction or, in the alternative, fails to state a claim.  *See Inter-Coastal Xpress, Inc. v. United States*, 296 F.3d 1357, 1365 (Fed. Cir. 2002) (holding that the CDA's statute of limitations is jurisdictional and operate as limit on the Tucker Act's waiver of sovereign immunity); *but see Creative Mgmt. Servs., LLC v. United States*, 989 F.3d 955, 961–62 (Fed. Cir. 2021) (questioning whether the CDA's twelve-month filing period is a jurisdictional requirement).

injunctive relief."). Because this is not a bid protest action, only § 1491(a)(2) applies. That section states:

> [t]o provide an entire remedy and to complete the relief afforded by the judgment, the court may, *as an incident of and collateral to any such judgment,* issue *orders directing restoration to office or position, placement in appropriate duty or retirement status, and correction of applicable records*, and such orders may be issued to any appropriate official of the United States. In any case within its jurisdiction, the court shall have the power to remand appropriate matters to any administrative or executive body or official with such direction as it may deem proper and just. The Court of Federal Claims shall have jurisdiction to render judgment upon any claim by or against, or dispute with, a contractor arising under section 7104(b)(1) of title 41, including . . . *other nonmonetary disputes on which a decision of the contracting officer has been issued* under section 6 of that Act.

28 U.S.C. § 1491(a)(2) (emphasis added). A review of the plain language of § 1491(a)(2) demonstrates that the Court lacks broad jurisdiction to issue equitable relief in general and specifically to grant the three requests for declaratory relief Plaintiff seeks here.

The relief sought by Plaintiff cannot be "incident to or collateral to" a money judgment because Plaintiff has not stated a claim for money that is within the Court's CDA jurisdiction, as explained above. *Id.* As well, the specific relief sought—declaring that the Government's delays were inexcusable, the 37-day extension was self-serving, or that the Government is not entitled to reprocurement costs or liquidated damages—does not fit in the narrow categories of equitable relief outlined in the first two sentences of § 1491(a)(2). *See id.* Although the final sentence of § 1491(a)(2) permits the Court to hear nonmonetary CDA claims, relief is plainly unavailable unless the dispute has been presented to and a final decision has been issued by the contracting officer as provided for by the CDA. *Id.*; *see Alliant Techsystems, Inc. v. United States*, 178 F.3d 1260, 1267 (Fed. Cir. 1999). As the Court already held, the Complaint does not allege that any claim was submitted to the CO pursuant to the CDA. *See supra* § II.C. Nor can Plaintiff circumvent the

limitations on the Court's jurisdiction by merely "reframing monetary claims as nonmonetary." *Securiforce Int'l Am.*, 879 F.3d at 1360.

Accordingly, the Court lacks jurisdiction to provide the broader declaratory relief sought by Plaintiff.

**E.      The Complaint Sufficiently Alleges a Claim for Relief.**

The Court does have jurisdiction over the remainder of Plaintiff's claim challenging the termination for default under the contract as written. *See Securiforce Int'l Am.*, 879 F.3d at 1362–63 (holding that an affirmative defense to a default termination, such as fraud or prior material breach, "need not first be presented to the CO for a final decision, since a defense is not a claim for money, and the CO has no necessary role in assessing the defense"). Accordingly, it may entertain Plaintiff's first two defenses—prior material breach and abuse of discretion—at least to the extent they do not effectively seek a contractual modification or equitable adjustment. The Government concedes as much but argues that Plaintiff has failed to state a claim for relief on those grounds. ECF No. 6 at 2, 33; ECF No. 9 at 8. Taking as true the allegations in the Complaint, the Court finds that Plaintiff has stated a plausible challenge to the default termination that is at this early stage sufficient to survive a motion to dismiss.

Principally, unlike other causes of action, in a default termination challenge the Government (not the plaintiff) "bears the burden of proof on the issue of default by the contractor" and, specifically, "the correctness of its actions in terminating a contractor for default." *Lisbon Contractors, Inc. v. United States*, 828 F.2d 759, 763 (Fed. Cir. 1987) (emphasis omitted). This is so, in part, because a termination for default is "a drastic sanction which should be imposed (or sustained) only for good grounds and on solid evidence." *Keeter Trading Co. v. United States*, 79 Fed. Cl. 243, 252 (2007) (quoting *Lisbon Contractors*, 828 F.2d at 765). Although a contracting officer has the discretion to terminate a contract, "the exercise of that discretion must be fair and

reasonable, not arbitrary or capricious." *Darwin Constr. Co. v. United States*, 811 F.2d 593, 597 (Fed. Cir. 1987) (quoting *Udis v. United States*, 7 Cl. Ct. 379, 387 (1985)).  Accordingly, in a case where a contractor has failed to make sufficient progress, a decision to terminate for default may be upheld only when the contracting officer had a reasonable belief that "there was no reasonable likelihood the contractor would perform within the time remaining."  *Securiforce Int'l Am.*, 879 F.3d at 1364; *see Lisbon Contractors*, 828 F.2d at 765.

The Government has not cited any cases that have decided the question of the propriety of a default termination on a motion to dismiss.  *See* ECF No. 13 at 17:24–18:17, 19:5–7 (acknowledging the unusual nature of its dismissal request).  The Government argues that dismissal at the pleadings stage is nonetheless proper because the allegations in the Complaint confirm that (1) Plaintiff failed to reassure the Government it would complete the contract because it conditioned performance on a modification of the contract price or brand requirement, and (2) Plaintiff was not close to completing the contract within the requisite period of performance.  *See* ECF No. 9 at 12–13.  While these facts may ultimately support a finding that the termination for default was justified, the Government has not shown that they are dispositive of the issue as a matter of law, especially when Plaintiff has alleged a prior material breach defense.  *Keeter Trading*, 79 Fed. Cl. at 253 ("[A] contractor's refusal to perform in the presence of a material breach of contract by the government does not constitute a repudiation."); *see Danzig v. AEC Corp.*, 224 F.3d 1333, 1337 (Fed. Cir. 2000).  Rather, the Federal Circuit has described the evaluation of a default termination decision as a fact-intensive inquiry, which would typically not be well suited for resolution on a motion to dismiss.  *See McDonnell Douglas Corp. v. United States*, 323 F.3d 1006, 1013, 1016–17 (Fed. Cir. 2003) (explaining the comprehensive factual and evidentiary issues that a court must consider when reviewing the circumstances leading up to a

default termination, such as a contractor's performance history, issues with subcontractors and suppliers, and financial situation). Here, the facts and circumstances surrounding the parties' communications, Plaintiff's performance, the alleged anticipatory repudiation, and other context leading to the default decision have yet to be developed.

So too are Plaintiff's allegations that the CO abused his discretion. The Government reduces those allegations to a complaint that the CO did not make an explicit determination about each factor set forth in FAR 49.402-3 (Procedure for Default) when issuing the termination. ECF No. 6 at 45–46; ECF No. 9 at 22–23. As it correctly points out, "'failure to consider one or more of the [FAR] factors should not invalidate a termination for default where the totality of the circumstances demonstrates a reasonable exercise of discretion.'" *Morganti Nat'l, Inc. v. United States*, 49 Fed. Cl. 110, 132 (2001) (alterations in original omitted) (emphasis added) (quoting *Lafayette Coal Co.*, ASBCA No. 32174, 89–3 BCA ¶ 21,963, 1989 WL 74885 (1989), *aff'd*, 36 F. App'x 452 (Fed. Cir. 2002)); *see DCX, Inc. v. Perry*, 79 F.3d 132, 135 (Fed. Cir. 1996). But Cause II cannot fairly be read so narrowly; and in any event, an assessment of the totality of the circumstances surrounding the termination is nonetheless necessary. Moreover, other contentions asserted in Plaintiff's abuse of discretion count require further factual review. *See* ECF No. 1 ¶¶ 80–95 (alleging, among other things, that the CO's decision was based on his subjective opinion and subject to outside influence). Thus, a determination at the motion to dismiss stage is not appropriate.

Moreover, even if the Government adequately proves default, the plaintiff may demonstrate that the default was excusable under the contract, *e.g.*, by showing that improper government actions were the cause of the default, rendering the plaintiff unable to perform. *Keeter Trading*, 79 Fed. Cl. at 252. "[W]hen determining whether a party caused a material breach, the

court must consider the nature and effect of the violation, viewed in context"—again requiring an inquiry into the facts and circumstances surrounding the alleged material breach. *See id.* at 253. Here, the Complaint contains various factual allegations asserting that the Government's conduct contributed to Plaintiff's deficient performance, including that the Government failed to promptly provide information necessary to prepare submittals and place orders, leaked information that complicated Plaintiff's ability to hire an installer, and provided limited and illegible specifications. *See, e.g.*, ECF No. 1 ¶¶ 49, 53, 56, 71, 141–42.

The Government argues that Plaintiff's excuses are not valid. *See* ECF No. 6 at 37.  On a Rule 12(b)(6) motion, however, the question is not whether Plaintiff "will ultimately prevail, but whether [its] complaint [is] sufficient to cross the federal court's threshold." *Skinner v. Switzer*, 562 U.S. 521, 529–30 (2011) (internal citations omitted); *see Nalco Co. v. Chem-Mod, LLC*, 883 F.3d 1337, 1350 (Fed. Cir. 2018) ("The 'purpose of a motion to dismiss is to *test the sufficiency of the complaint, not to decide the merits*.'" (quoting *Gibson v. City of Chi.,* 910 F.2d 1510, 1520 (7th Cir. 1990)) (emphasis in original)).  As the Federal Circuit has explained, *Twombly*'s "'plausibility standard is not akin to a probability requirement.'  Rather, Plaintiffs need only 'nudge their claims across the line from conceivable to plausible.'" *CODA Dev. S.R.O. v. Goodyear Tire & Rubber Co.*, 916 F.3d 1350, 1360 (Fed. Cir. 2019) (internal citations omitted).

Accepting Plaintiff's allegations as true, the Complaint pleads "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.  The Court acknowledges that other allegations in the Complaint may call into question the bases of Plaintiff's defenses, including, for example, Plaintiff's representation in the April 21 email to the CO that it could quickly continue performing if the Government approved the installation of a York chiller. *See* ECF No. 1 ¶¶ 66–69.  Whether Plaintiff's defenses are ultimately meritorious is a question for

another day.  Considering the allegations as a whole, Plaintiff is entitled to try to establish in further proceedings that the sequence of events amounted to a prior material breach and excusable delay. *Cf. E&I Glob. Energy Servs., Inc. v. United States*, No. 2022-1472, 2022 WL 17998224, at *5 (Fed. Cir. Dec. 30, 2022) (reversing Rule 12(c) dismissal of default termination challenge).

In sum, accepting the allegations in the Complaint as true—*i.e.*, that the CO abused his discretion in reaching the default decision, that the Government's delay, failure to provide missing information, leak of information, and incomplete or illegible specifications rendered Plaintiff unable to perform—Plaintiff has sufficiently stated a plausible claim for relief at this early stage of the proceedings.  And given the initial burden upon the Government to prove the correctness of its actions and the drastic nature of a default termination, the Court finds that dismissal of the default termination challenge in its entirety under RCFC 12(b)(6) is not justified.

### III.  CONCLUSION

For these reasons, the Government's Motion to Dismiss Plaintiff's Complaint pursuant to RCFC 12(b)(1) and 12(b)(6) (ECF No. 6) is **GRANTED in part** and **DENIED in part**.

**SO ORDERED.**

Dated: March 31, 2023                             */s/ Kathryn C. Davis*
                                                  KATHRYN C. DAVIS
                                                  Judge